WECHSLER HARWOOD LLP
Robert I. Harwood (RH-3286)
Jeffrey M. Norton (JN-4827)
488 Madison Avenue, 8th Floor
New York, New York 10022
Tel. (212) 935-7400
Fax (212) 753-3630

[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL GAUGLER, On Behalf of Plaintiff and All Others Similarly Situated, | Civil Action No.: 05 cv 8886 |
| Plaintiff, | |
| vs. | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| PHILLIP R. BENNETT, GERALD M. SHERER, LEO R. BREITMAN, DAVID V. HARKINS, SCOTT L. JAECKEL, THOMAS H. LEE, RONALD L. O'KELLEY, SCOTT A. SCHOEN, CREDIT SUISSE FIRST BOSTON LLC, GOLDMAN, SACHS & CO., AND GRANT THORNTON LLP, | |
| Defendants. | JURY TRIAL DEMANDED |

This writing/publication is a creative work fully protected by all applicable copyright laws, as well as by misappropriation, trade-secret, unfair-competition and other applicable laws. The authors of this work have added value to the underlying factual materials herein through one or more of the following: unique and original selection, coordination, expression, arrangement, and classification of the information. No copyright is claimed in the text of statutes, regulations, and any excerpts from analysts' reports or news articles quoted within this work. Copyright © 2005 by Scott+Scott, LLC and Wechsler Harwood LLP. Scott+Scott, LLC and Wechsler Harwood LLP will vigorously defend all of their rights to this writing/publication. All rights reserved – including the right to reproduce in whole or in part in any form. Any reproduction in any form by anyone of the material contained herein without the permission of Scott+Scott, LLC and Wechsler Harwood LLP is strictly prohibited.

Plaintiff, individually and on behalf of all other persons similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters, based on, inter alia, the investigation conducted by and through plaintiff's attorneys, which included, amongst other things, a review of the defendants' press releases, Securities and Exchange Commission ("SEC") filings by Refco, Inc. ("Refco" or the "Company") and media reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE CASE

1.      Plaintiff brings this action pursuant to §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k and 77o, on his own behalf and on behalf of all other persons or entities who purchased or otherwise acquired Refco common stock pursuant or traceable to the Company's IPO on August 11, 2005. In addition, Plaintiff bring this action pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), on his own behalf and on behalf of all other persons or entities who purchased or otherwise acquired Refco common stock between August 11, 2005 and October 10, 2005, both dates inclusive (the "Class Period"). Plaintiff names as defendants certain of Refco's senior officers and directors, its commercial/investment bankers/underwriters involved with the Company's IPO, and its outside auditor.

2.      Defendants' registrations statements issued in connection with the Company's 2005 IPO contained untrue statements of material fact or omitted to state material facts required to be stated therein or necessary to make the facts stated therein not misleading as these statements related to state of the Company's internal controls

and ability to provide financial guidance and forecasts. Moreover, after the IPO, defendant's false and misleading statements and active concealment of true facts, occurring during the three months since the IPO, regarding the Company's financial condition and business prospects, served to maintain an artificially inflated price of Refco's stock throughout the Class Period.

3.      Notwithstanding any language herein, plaintiff's Securities Act claims are pled separate and apart from the Exchange Act claims.  The Securities Act claims do not incorporate by reference, or otherwise, any allegations pled in support of the Exchange Act claims.  Pursuant to the Second Circuit's decision in *Rombach v. Chang,* 355 F.3d 164, 169 n. 4 (2d Cir. 2004), and the recent decisions from this District, Plaintiff's non-fraud allegations in support of the Securities Act claims are pled under notice pleading standards of Fed. R. Civ. P. 8(a).

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to § 22 of the Securities Act, 15 U.S.C. § 77v, and § 27 of the Exchange Act, 15 U.S.C. § 78aa.  The claims alleged herein arise under §§ 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o and §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

5.      Venue is proper in this Judicial District pursuant to § 22 of the Securities Act, 15 U.S.C. § 77v, § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions giving rise to the violations of law alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in this Judicial District.  Additionally, Refco maintains a principal executive office in this Judicial District at One World Financial Center, 200 Liberty Street Tower A, New York, New York, where the day-to-day operations of the Company are directed and managed.

6.     In connection with the acts and conduct alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails and the facilities of the national securities exchanges.

## PARTIES

7.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased shares of Refco stock at artificially inflated prices during the Class Period as described in the attached certification and was damaged thereby.

8.     Refco claims that it is provides execution and clearing services for exchange-traded derivatives and brokerage services in the fixed income and foreign exchange markets in the United States, Bermuda, and the United Kingdom. Refco offers prime brokerage services, including execution, clearing, securities financing, securities lending, custody, and trade processing. Its customers include corporations, government agencies, hedge funds, managed futures funds, pension funds, financial institutions, retail clients, and professional traders. The Company's principal executive offices are located at One World Financial Center, 200 Liberty Street Tower A, New York, New York.  On October 18, 2005, Refco filed a voluntary petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §1101, et seq., in the United States Bankruptcy Court for the Southern District of New York. Accordingly, Refco is currently not a defendant.

9.     Defendant Phillip R. Bennett ("Bennett") was at all relevant times hereto Chairman of the Board, President and Chief Executive Officer ("CEO") and a director of Refco. As CEO and a director, Bennett prepared, reviewed and signed the Company's Registration Statements, in connection with the Company's initial public offering ("IPO").

10.     Defendant Gerald M. Sherer ("Sherer") was at all relevant times hereto Chief Financial Officer ("CFO") of Refco. As CFO, Sherer prepared, reviewed and

- 3 -

signed the Company's Registration Statements, in connection with the Company's initial public offering ("IPO").

11.   Defendant Leo R. Breitman ("Breitman") was at all relevant times hereto a director of Refco. As a director, Breitman prepared, reviewed and signed the Company's Registration Statements, in connection with the Company's initial public offering ("IPO").

12.   Defendant David V. Harkins ("Harkins") was at all relevant times hereto a director of Refco. As a director, Harkins prepared, reviewed and signed the Company's Registration Statements, in connection with the Company's initial public offering ("IPO").

13.   Defendant Scott L. Jaeckel ("Jaeckel") was at all relevant times hereto a director of Refco. As a director, Jaeckel prepared, reviewed and signed the Company's Registration Statements, in connection with the Company's initial public offering ("IPO").

14.   Defendant Thomas H. Lee ("Lee") was at all relevant times hereto a director of Refco. As a director, Lee prepared, reviewed and signed the Company's Registration Statements, in connection with the Company's initial public offering ("IPO").

15.   Defendant Ronald L. O'Kelley ("O'Kelley") was at all relevant times hereto a director of Refco. As a director, O'Kelley prepared, reviewed and signed the Company's Registration Statements, in connection with the Company's initial public offering ("IPO").

16.   Defendant Scott A. Schoen ("Schoen") was at all relevant times hereto a director of Refco. As a director, Schoen prepared, reviewed and signed the Company's Registration Statements, in connection with the Company's initial public offering ("IPO").

17.     Each of the named defendants in ¶9-16 (the "Individual Defendants") participated in the Offering by, among other things, preparing, reviewing and signing the Registration Statement.

18.     Defendant Credit Suisse First Boston LLC was a direct underwriter for 6,855,550 shares of the Company's stock, in addition to its responsibilities as a major underwriting representative for other underwriters in connection with the Refco IPO.

19.     Defendant Goldman, Sachs & Co. was a direct underwriter for 5,639,200 shares of the Company's stock, in addition to its responsibilities as a major underwriting representative for other underwriters in connection with the Refco IPO.

20.     Collectively, defendants named in ¶¶18-19 are referred to as the "Underwriter Defendants."

21.     Defendant Grant Thornton LLP was the declared expert in accounting and auditing that undertook to meet the various requirements and responsibilities as the Company's independent registered public accountant in connection with the Refco IPO.

## THE UNDERWRITERS' INVOLVEMENT IN SELLING
## REFCO BONDS PURSUANT TO THE OFFERING

22.     Refco's defendant underwriters had a peculiar and detailed understanding of defendants' business, based on the fact that the Company provided execution and clearing services for exchange-traded derivatives; and brokerage services in the fixed income and foreign exchange markets in the United States, Bermuda, and the United States. The Company's customers include corporations, government agencies, hedge funds, managed futures funds, pension funds, financial institutions, retail clients, and professional traders. Thus, the defendant underwriters would have an unusual awareness of the Company as a major player in the securities markets, but also enjoy visibility into its transactions and deals involving hundreds of millions of dollars, as well as those deals and transactions involving the individual defendants and in connection with the IPO.

- 5 -

## THE INDIVIDUAL DEFENDANTS' CONTROL OVER REFCO AND ITS COMMUNICATIONS TO THE PUBLIC CONCERNING FINANCIAL RESULTS

23.     Each of the above named officers and directors of Refco, by virtue of their high-level positions with the Company and committee memberships, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements and financial condition, as alleged herein.  Said defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading press releases, statements and information alleged herein, knew or recklessly disregarded that materially false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

24.     In addition to the above-described involvement, each Individual Defendant had knowledge of Refco's problems. Each defendant was motivated to conceal such problems.  Defendant Sherer, serving as CFO, provided for financial reporting and communications with the market.  Defendant Sherer directed communications with the market, including conference calls, as well as internal reports showing Refco's forecasted and actual growth.     Defendant Bennett, serving as CEO also provided for communications with the market, including conference calls, as well as reports on Company operations, financing and press releases issued by the Company. Each Individual Defendant sought to demonstrate that he could lead the Company successfully and generate the growth expected by the market.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

25.     As to Plaintiff's Exchange Act claims, each defendant is liable for (a) making false statements, *or* (b) failing to disclose adverse facts known to him about Refco.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Refco publicly traded securities was a success, as it (a) deceived the investing public regarding Refco's prospects and business; (b) facilitated sales of 12.5 million shares of the Company's stock at artificially inflated prices during the IPO; (c) artificially inflated the price of Refco's publicly traded securities; (d) positioned the Company for sales of an additional 14 million shares of Company stock at inflated prices; and (e) caused plaintiff and other members of the Class to purchase Refco's publicly traded securities at inflated prices.

## OVERVIEW OF CONDUCT WHICH VIOLATES THE EXCHANGE ACT

26.     Unaware of the serious process, systems and internal control issues facing Refco, investors purchased stock pursuant to registration statements containing untrue statements of material fact or omitting to state a material fact required to be stated therein or necessary to make the facts stated therein not misleading. At the root of these issues was the fact that the Company was provided misleading, unreliable and unpredictable quarterly and annualized guidance.

27.     Defendants lacked effective process management and systems essential for accurate accounting, including the production of accurate financial statements and forward guidance, a problem persisted after the IPO. Defendants concealed the ***tenuous nature*** of their accounting practices, making their financial statements and guidance ***inherently unreliable for most business purposes.*** Moreover, defendants were able to omit and conceal information regarding their true financial interests in and financial relationships with the Company, both before and after the IPO. Finally, since defendants' financial statements and guidance were inherently unreliable, both the Company's

business prospects and in fact the value of the underlying business was in doubt, including the use of inherently false and misleading pre-IPO financial statements for valuation purposes *to convince investors to buy the Company's stock during the IPO.*

28.    The Class Period begins on August 11, 2005, as the Company commenced its IPO, resulting in the sale of 12,500,000 shares of common stock, not including additional sales by the selling stockholders of 14,000,000 shares of common stock or an underwriters' option to purchase a maximum of 3,975,000 additional shares from the Company to cover over-allotments of shares.[1] The IPO price of the Company's common stock is $22.00 per share. Defendants relied on their false and misleading financial statements in their registration statements/prospectus and issued guidance based on its inherently unreliable financials.

29.    At the end of the Class Period, the truth was revealed. On October 10, 2005, defendants delivered shocking and devastating revelations of fraud, warning investors that defendant Bennett, the Company's Chairman and CEO had been ordered to take a leave of absence after discovering that *it was owed $430 million by an entity controlled by Bennett. Moreover, the Company determined that prior financial statements for the fiscal years ending 2002 through 2005 and for May 2005 should not be relied on.* On the news of October 10, 2005, the price of the Company's stock undertook a radical decline, plunging $12.96, or 45.4%, to close at $15.60, on unprecedented volume of over 24.2 million shares, over fifty times average daily volume.

30.    During the Class Period and in violation Exchange Act, defendants knew and concealed:

(a)    deficient and defective internal operational controls were in existence at the Company *for a period of several years before the commencement of the Company's IPO;*

---

[1] This and further information regarding the IPO can be found in defendants' SEC Form 424B1, filed on August 11, 2005.

(b)     that the Company's deficient and defective internal operational controls **concealed the true picture of the Company's financial progress and business prospects,** both during and from a time prior to the beginning of the Class Period;

(c)     egregious acts of the Company's own officers and directors, to misrepresent their own interests in and the true financial state of the Company;

(d)     that the Company would be required to restate its pre-IPO financial statements, from 2002 through May of 2005; and

(e)     that investors would not learn the truth about the true nature of the Company's ethical and financial dilemma, or its deficient and defective internal operational controls until the end of the Class Period.

## BACKGROUND/DEFENDANTS' PRE-CLASS PERIOD STATEMENTS

31.     Refco claims that it provides execution and clearing services for exchange-traded derivatives and brokerage services in the fixed income and foreign exchange markets in the United States, Bermuda, and the United Kingdom. It executes and clears customers' orders for exchange-traded derivatives. The Company's customers use derivatives brokerage and clearing platform to place buy and sell orders for derivatives contracts, which are directed to the appropriate exchange for matching. Refco offers prime brokerage services, including execution, clearing, securities financing, securities lending, custody, and trade processing. It provides these prime brokerage services primarily in the U.S. Treasury securities, foreign exchange, and non-dollar fixed income markets. As of April 8, 2005, the Company served approximately 200,000 customer accounts from its 23 locations in 14 countries. Its customers include corporations, government agencies, hedge funds, managed futures funds, pension funds, financial institutions, retail clients, and professional traders.

32.     From a time prior to the IPO, and at least as early as the Company's 2002 fiscal year, Refco relied on inherently false and misleading financial statements to communicate its business prospects. Defendants lacked effective process management and systems essential for the accurate accounting of its financial measures and forward guidance, a problem that persisted well after the IPO. Defendants concealed the tenuous nature of their accounting practices, making their financial statements and guidance inherently unreliable for most business purposes. Moreover, defendants were able to conceal their true financial interests in and financial relationships with the Company, both before and after the IPO. Finally, since defendants' financial statements and guidance were inherently unreliable, both the Company's business prospects and in fact the value of the underlying business was in doubt, including the use of inherently false and misleading pre-IPO financial statements for valuation purposes, to convince investors to buy the Company's stock during the IPO.

## UNTRUE STATEMENTS OF MATERIAL FACT AND
## MATERIAL OMISSIONS IN REFCO'S REGISTRATION STATEMENTS

### IPO Registration Statements/Prospectus

33.     In all, defendants filed seven Registration Statements in connection with the Company's IPO, including its initial SEC Form S-1 filed on April 8, 2005 and its sixth amendment, filed as SEC Form S-1/A filed on August 10, 2005. In its most substantially complete and latest Registration Statement, on August 8, 2005, the Company filed its fifth amendment, as SEC Form S-1/A in connection with its IPO. The filing stated in part:

The THL Transactions

On August 5, 2004, THL Refco Acquisition Partners, an affiliate of Thomas H. Lee Partners, L.P., and its affiliates and co-investors acquired approximately 57% of the equity interests in our indirect

subsidiary, Refco Group Ltd., LLC ("Refco Group"), which they hold through our direct subsidiary New Refco Group Ltd., LLC ("New Refco"), for approximately $507.0 million in cash. *In connection with the transaction, Phillip Bennett, our President and Chief Executive Officer, exchanged his existing equity investment of approximately $382.5 million in Refco Group for an approximate 42.8% equity interest in New Refco, and other members of our management made an investment in New Refco aggregating approximately $4.5 million in cash.* Concurrently with the closing of the acquisition, Refco Group entered into senior credit facilities providing for a fully drawn $800.0 million term loan and an undrawn $75.0 million revolving loan facility, and, together with Refco Finance Inc., issued $600.0 million in aggregate principal amount of senior subordinated notes. Also concurrently with the consummation of the transactions described above, Refco Group distributed $550.0 million in cash as well as all of the equity interests of Forstmann-Leff International Associates, LLC, which at that time owned substantially all the assets of Refco Group's Asset Management business to Refco Group Holdings, Inc., an entity that was owned by Tone Grant and Phillip Bennett and that is now wholly owned by Phillip Bennett. We refer to the foregoing transactions collectively as the "THL Transactions."

\* \* \*

Proven and Committed Management Team

The members of our senior management team have an average of 24 years of industry experience. Phillip Bennett, who has been with us for 24 years, became our President and Chief Executive Officer in 1998. Under their leadership, net revenues have grown at a compound annual growth rate of 23.6% from fiscal year 2000 through fiscal year 2005. *Following this offering, Mr. Bennett will beneficially own an approximate 33.8% interest in us.*

\* \* \*

Controlled Company Status

Following the Reincorporation, the majority of our shares and voting power will be controlled by Thomas H. Lee Partners, L.P. and Phillip Bennett, our President and Chief Executive Officer (collectively the "Majority Stockholders"). For this reason, we will be a "controlled company" under the NYSE corporate governance standards, which permit a company of which more than 50% of the voting power is held by an individual, a group or another company to elect not to comply with certain NYSE corporate governance standards. *Upon completion of the offering, we intend to avail ourselves certain of these exemptions, which will eliminate the requirements that we have a majority of independent directors on our board of directors and that our compensation and nominating and corporate governance and executive committees be composed entirely of independent directors.* We will have annual performance evaluations of our nominating and corporate governance and compensation committees, as well as written charters addressing each committee's purpose and responsibilities. The other requirements of the

- 11 -

NYSE's corporate governance standards will apply to us as of the date of listing with the NYSE.

\* \* \*

Management Investment

In connection with the THL Transactions, Phillip Bennett, through his continuing ownership interest in Refco Group Holdings, Inc., rolled over an approximate $382.5 million equity investment into the common equity interests of New Refco. Upon consummation of this offering, Mr. Bennett will beneficially own approximately 33.8% of our common stock. Messrs. Sexton, Murphy, Maggio and Klejna made investments of $1.0 million, $500,000, $250,000 and $200,000, respectively, in the common equity interests of New Refco in connection with the THL Transactions.

\* \* \*

REPORT OF INDEPENDENT REGISTERED PUBLIC
ACCOUNTING FIRM

To the Members of New Refco Group Ltd., LLC

We have audited the accompanying consolidated balance sheet of New Refco Group Ltd., LLC (the "Successor" or "Company") (a Delaware limited liability company) and subsidiaries as of February 28, 2005 and the related consolidated statements of income, changes in members' equity and cash flows for the period from August 6, 2004 through February 28, 2005. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor are we engaged to perform an audit of its internal control over financial reporting. Our audit included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of New Refco Group Ltd., LLC and subsidiaries as of February 28, 2005, and the results of their operations and their cash flows for the period from August

- 12 -

6, 2004 through February 28, 2005 in conformity with accounting principles generally accepted in the United States of America.

As discussed in Note H(1)(i), the notes to the consolidated financial statements have been restated to include summarized financial information related to a significant equity method investment.

Grant Thornton LLP

New York, New York

May 24, 2005 (except for Note H(1)(i) as to which the date is July 19, 2005)

\* \* \*

Goodwill of $716.6 million was recognized as part of the Transactions on August 5, 2004 and was assigned to Derivative Brokerage & Clearing and **Prime Brokerage/Capital Markets** in the amounts of $286.6 million **and $430.0 million, respectively.**

\* \* \*

34.     Defendants' discussion of its historic financial statements and relationships to its officers and directors in its Registration Statement/prospectus of August 8, 2005 contained untrue statements of material fact or omitted to state a material fact required to be stated therein or necessary to make the facts stated therein not misleading, for the following reasons. First, defendants lacked effective process management and systems essential for the generation of accurate financial statements, which served to make quarterly and annualized guidance based on this measure misleading, a problem that persisted long after the IPO, making these statements **inherently unreliable for most business purposes.**

35.     Secondly, the Company's Registration Statements/prospectus omitted the true financial interests in and financial relationships that defendant Bennett had with the Company, both before and after the IPO. Defendant Bennett omitted his interest in one or more business entities that owed the Company as much as $430 million during the relevant period. **Nowhere within the Registration Statement is disclosure of these highly relevant and material facts about defendant Bennett's indebtedness to the Company**

- 13 -

*revealed.* Moreover, the materiality of this omitted information is heightened, given the fact that the Company planned to seek an exemption from NYSE corporate governance standards on behalf of the Company and defendant Bennett.  Finally, since defendants' financial statements and guidance were inherently unreliable, both the Company's business prospects and in fact the value of the underlying business was in doubt, including the use of inherently unreliable and misleading pre-IPO financial statements for valuation purposes, serving to convince investors to buy the Company's stock during the IPO.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS MADE DURING THE EXCHANGE ACT CLASS PERIOD

36.     On August 11, 2005, the Company issued a press release entitled, "REFCO INC. Prices Its Initial Public Offering At $22.00 Per Share". The press release stated in part:

> Refco Inc. (NYSE: RFX), a diversified financial services company, today announced that it has priced its initial public offering of 26,500,000 shares of common stock at $22.00 per share.  The company is selling 12,500,000 shares, and 14,000,000 shares will be sold by existing stockholders.  Refco has granted the underwriters an option to purchase from Refco within the next thirty days up to an additional 3,975,000 shares at the initial public offering price to cover over-allotments, if any.
>
> Refco's common stock is scheduled to commence trading on August 11, 2005 on the New York Stock Exchange under the symbol RFX.
>
> Proceeds from the shares sold by Refco will be used to redeem outstanding indebtedness and for general corporate purposes.  Any proceeds from the exercise of the underwriters' over-allotment option will be paid as a dividend to Refco's stockholders of record prior to the offering.
>
> * * *
>
> A registration statement relating to these securities has been declared effective by the Securities and Exchange Commission.  This press release shall not constitute an offer to sell or a solicitation of an offer to buy, nor shall there be any sale of these securities in any state in which

- 14 -

such an offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such state.

* * *

37.     The S-1/A Registration Statement/prospectus of August 8, 2005 described and incorporated by reference in defendants' press release of August 11, 2005 was false and misleading for the following reasons. First, on or before this date, defendants lacked effective internal controls and corporate compliance essential for accurate financial accounting, rendering the Company's historic financial statements and information on the Company's relationships to its officers and directors in its Registration Statements/prospectus of 2005 false and misleading. The Company's false and misleading financial statements would ultimately require restatement, going as far back as the 2002 fiscal year.

38.     Secondly, the Company's Registration Statements/prospectus concealed the true financial interests in and financial relationships the defendants had with the Company, both before and after the IPO. The fact that defendants were able to conceal their interests in business entities that owed the Company hundreds of millions of dollars was not only false and misleading, but demonstrated that defendants duties of care and loyalty to the Company in doubt. Finally, since defendants' financial statements and guidance were false and misleading, both the Company's business prospects and in fact the value of the underlying business was also erroneous, false and misleading, including the use of inherently false and misleading pre-IPO financial statements for valuation purposes, to convince investors to buy the Company's stock during the IPO.

**THE TRUTH IS REVEALED**

39.     On October 10, 2005, prior to the commencement of the day's trading session, defendants issued a press release entitled, "Refco Announces Undisclosed Affiliate Transaction". The press release stated in part:

- 15 -

Refco Inc. (NYSE: RFX) today announced that *it had discovered through an internal review a receivable owed to the Company by an entity controlled by Phillip R. Bennett, Chief Executive Officer and Chairman of the Board of Directors, in the amount of approximately $430 million. Mr. Bennett today repaid the receivable in cash, including all accrued interest. Based on the results of the review to date, the Company believes that the receivable was the result of the assumption by an entity controlled by Mr. Bennett of certain historical obligations owed by unrelated third parties to the Company, which may have been uncollectible. The Company believes that all customer funds on deposit are unaffected by these activities. Independent counsel and forensic auditors have been retained to assist the Audit Committee in an investigation of these matters.*

*This receivable from the entity controlled by Mr. Bennett was reflected on the Company's prior period financials, as well as on the Company's May 31, 2005 balance sheet. The receivable was not shown as a related party transaction in any such financials. For that reason, and after consultation by the Audit Committee with the Company's independent accountants, the Company determined, on October 9, 2005, that its financial statements, as of, and for the periods ended, February 28, 2002, February 28, 2003, February 28, 2004, February 28, 2005, and May 31, 2005, taken as a whole, for each of Refco Inc., Refco Group Ltd., LLC and Refco Finance, Inc. should no longer be relied upon.*

At the request of the Board of Directors Mr. Bennett has taken a leave of absence. William M. Sexton, who recently announced his impending resignation as Executive Vice President and Chief Operating Officer of Refco Inc. and Refco Group Ltd., LLC, will remain with the Company and has been appointed as Chief Executive Officer of Refco Inc. Mr. Sexton said, "I am staying at Refco because I believe in our employees, customers and franchise. I am excited about the opportunities ahead and am eager to work with our management team to help the Company achieve even greater success." Joseph J. Murphy, Chief Executive Officer of Refco Global Futures and President of Refco LLC, has been appointed President of Refco Inc. and Refco Capital Markets, Ltd. Mr. Murphy said, "We continue to see strong momentum across our businesses with record derivative contract and foreign exchange volume in the quarter." Mr. Sexton and Mr. Murphy have been leaders of the senior management team at Refco for the past six years, and have been instrumental in the Company's growth and success. Also at the request of the Board, Santo C. Maggio, President and Chief Executive Officer of Refco Securities, LLC and Refco Capital Markets, Ltd., has taken a leave of absence. Peter McCarthy has been appointed President of Refco Securities, LLC.

In light of the Audit Committee's investigation, the Company, Refco Group Ltd., LLC and Refco Finance Inc. each will likely delay the filing of its Quarterly Report on Form 10-Q for the quarterly period ending August 31, 2005, due on October 17, 2005. The Company cannot estimate at this time when the Fiscal 2006 second quarter Form 10-Q filings will be made or when the Audit Committee investigation will be concluded.

Business Highlights

For the quarter ended August 31, 2005, derivatives brokerage and clearing contract volumes increased by 61 million contracts, or 40.3%, to 212 million contracts for the second quarter compared to the same quarter a year ago, and by 5 million contracts, or 2.5%, compared to the quarter ended May 31, 2005.

Foreign exchange dollar volumes increased by $172 billion, or 56.4%, to $477.4 billion for the second quarter compared to the same quarter a year ago, and by $67.6 billion, or 16.5%, compared to the quarter ended May 31, 2005.

The average net customer securities financing portfolio, or average domestic net repo book, increased by 27.4% for the quarter ended August 31, 2005 to $47.0 billion from $36.9 billion for the quarter ended August 31, 2004.

As of August 31, 2005, cash and cash equivalents were $648.6 million (of which approximately $230 million was subsequently used to redeem a portion of the Company's subordinated debt), and regulated subsidiaries reported net capital of $665.8 million and excess regulatory capital of $279.3 million. These figures do not reflect the $433 million received today from Mr. Bennett to settle his outstanding receivable.

* * *

40.     Defendants revealed the shocking truth, that the Company's financial statements were erroneous, false and misleading, could no longer be relied upon and should be disregarded by the investment community. This news was a direct result of defendants' ineffective internal controls and corporate non-compliance as to its accounting practices, rendering the Company's historic financial statements and information on the Company's relationships to its officers and directors in its Registration Statements/prospectus of 2005 false and misleading.

41.     Defendants were able to conceal their interests in one or more business entities that owed the Company hundreds of millions of dollars, acts not only false and misleading in nature, but demonstrative of defendants' malfeasance in their duties of care and loyalty to the Company. This is of particular concern given the fact that the Company *planned to seek an exemption from NYSE corporate governance standards on behalf of the Company and defendant Bennett.* Finally, since defendants' financial statements

- 17 -

and guidance were now admitted to be erroneous, false and misleading, both the Company's business prospects and in fact the value of the underlying business was also erroneous, false and misleading, including the use of inherently false and misleading pre-IPO financial statements for valuation purposes, to convince investors to buy the Company's stock during the IPO.

42.    Later during the day of October 10, 2005, the Wall Street Journal published an article entitled, "Refco May Make Restatement, Puts CEO on Leave of Absence". The article stated in part:

> NEW YORK -- Refco Inc. *said it discovered through an internal review that the company was owed about $430 million by an entity controlled by Chairman and Chief Executive Phillip Bennett, who has repaid the receivable, including accrued interest, in cash.*
>
> *Refco also said that Mr. Bennett is taking a leave of absence, at the request of Refco's board.* Chief Operating Officer and Executive Vice President William Sexton, who previously planned to leave the company, agreed to remain at the financial-service company as CEO.
>
> The company's shares fell $9.52, or 33%, to $19.04, in early afternoon trading on the New York Stock Exchange. Refco went public in August, pricing 26.5 million shares at $22.
>
> Refco -- which specializes in derivatives-brokerage services -- said its financial statements for fiscal 2002 to the first quarter of fiscal 2006 are no longer reliable. The receivable was in the company's prior-period report and on the balance sheet of May 31 but wasn't shown as a related-party transaction.
>
> *Refco's audit committee is investigating the transaction with Mr. Bennett's group. The company hired an independent counsel and forensic auditors to help with the probe.*
>
> The company said the receivable resulted from the assumption by Mr. Bennett's entity of obligations owed by unrelated third parties to the company, which may have been uncollectible.
>
> Refco said all customer funds on deposit are unaffected by these activities, based on the review to date.
>
> *In light of the investigation, the company will likely delay the filing of its financial statement for the quarter ended Aug. 31. The filing is due next Monday, Refco can't estimate when it will submit its second-quarter financial statements or when the audit committee will conclude their probe.*

Refco also named Joseph Murphy president of Refco and its capital markets unit. Mr. Murphy is chief executive of Refco's global futures business and president of Refco LLC. Messrs. Sexton and Murphy have been leaders of the company's senior management team for the past six years.

*Santo Maggio has taken a leave of absence at the board's request. Mr. Maggio was president and chief executive of Refco Securities LLC and Refco Capital Markets Ltd. Refco named Peter McCarthy president of its securities unit.*

As of Aug 31, Refco had cash and cash equivalents of $648.6 million. About $230 million of the total was subsequently used to redeem a portion of the company's subordinated debt. The company's regulated units had net capital of $665.8 million and excess regulatory capital of $279.3 million. *These figures don't reflect Mr. Bennett's payment.*

\* \* \*

43.     On the news of October 10, 2005, the price of the Company's stock undertook a dramatic decline, plunging $12.96, or 45.4%, to close at $15.60, on unprecedented volume of over 24.2 million shares, over fifty times average daily volume. The almost 45% decline in Refco's stock price at the end of the Class Period was a direct result of the nature and extent of defendants' fraud suddenly being revealed to investors and the market. The shocking disclosure and magnitude of Refco's stock price decline negate any inference that the loss suffered by plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the defendants' fraudulent conduct.

44.     During the same period in which Refco's stock price fell almost 45% as a result of defendants' fraud being revealed, the Standard & Poor's 500 securities index was flat. The economic loss, *i.e.,* damages, suffered by plaintiff and other members of the Class, was a direct result of defendants' fraudulent scheme to artificially inflate Refco's stock price and the subsequent significant decline in the value of Refco's stock when defendants' prior misrepresentations and other fraudulent conduct was revealed.

45.     During the Class Period, defendants knew and concealed:

(a) deficient and defective internal operational controls in existence at the Company *for a period of several years before the commencement of the Company's IPO;*

(b) that the Company's deficient and defective internal operational controls *concealed the true picture of the Company's financial progress and business prospects,* both during and from a time prior to the beginning of the Class Period;

(c) egregious acts of the Company's own officers and directors, to misrepresent their own interests in and the true financial state of the Company;

(d) that the Company would be required to restate its pre-IPO financial statements, from 2002 through May of 2005; and

(e) that investors would not learn the truth about the true nature of the Company's ethical and financial dilemma, or its deficient and defective internal operational controls until the end of the Class Period.

## FALSE FINANCIAL STATEMENTS

46. The financial statements issued by Refco during the Class Period and the statements about them were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's accounting in violation of GAAP and SEC rules.

47. GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. §210.4-01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial

statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements.  17 C.F.R. §210.10-01(a).

48.    Due to these accounting improprieties, the Company presented its financial results and statements in a manner which violated GAAP, including violations of the following fundamental accounting principles:

(a) The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements (APB No. 28, ¶10);

(b) The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1, ¶34);

(c) The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources (FASB Statement of Concepts No. 1, ¶40);

(d) The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it.  To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

(e) The principle that financial reporting should provide information about an enterprise's financial performance during a period.  Investors and creditors often use information about the past to help in assessing the prospects of an enterprise.  Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly

based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

(f)  The principle that financial reporting should be reliable in that it represents what it purports to represent.  That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

(g) The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions. (FASB Statement of Concepts No. 2, ¶79); and

(h) The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered.  The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97).

49.    Further, the undisclosed adverse information concealed by defendants during the Class Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## FRAUD-ON-THE-MARKET DOCTRINE

## AS TO EXCHANGE ACT CLAIMS

50.    At all relevant times, the market for Refco securities was an efficient market for the following reasons, among others:

(a)   Refco's stock met the requirements for listing, and was listed and actively traded on the New York Stock Exchange, a highly efficient and automated market;

(b)   As a regulated issuer, Refco filed periodic public reports with the SEC; and

(c)   Refco regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

51.   As a result of the foregoing, the market for Refco's securities promptly digested current information regarding Refco from all publicly available sources and reflected such information in Refco's stock price.  Under these circumstances, all persons who purchased or acquired Refco's securities during the Class Period suffered similar injury through their purchase of the aforementioned securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

52.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements

was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Refco who knew that those statements were false when made.

## CLASS ACTION ALLEGATIONS

53.   Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23, on behalf of all persons who purchased or acquired the securities of Refco in connection with the IPO and between August 11, 2005 and October 10, 2005 (the "Class Period"). Excluded from the Class are defendants, any entity in which a defendant has or had a controlling interest, and members of defendants' families.

54.   The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. During the Class Period, Refco had more than 127 million shares of stock outstanding, owned by thousands of persons. There were also 12.5 million shares of Refco common stock sold pursuant to the Company's registration statement/prospectus, including the Company's registration statement of August 8, 2005. Record owners and other class members may be identified from records maintained by Refco and/or its transfer agents and may be notified of the pendency of the action by mail, using a form customarily used in securities class actions.

55.   There is a well-defined community of interest in the questions of law and fact involved in this case. There are no conflicts between plaintiff and the Class, and plaintiff's claims are typical of those of other Class members. The questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include the following:

(a)     Whether §§11, 12(a)(2) and 15 of the Securities Act, and §§10(b) and 20(a) of the Exchange Act were violated by Refco and the Individual Defendants.

(b)     Whether defendants misrepresented material facts;

(c)     Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the defendants knew or should have known that their statements were false and misleading;

(e)     Whether the prices of Refco securities were artificially inflated during the Class Period; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable.  Furthermore, the damages suffered by individual Class members may be relatively small, and the expense and burden of litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.  Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class and securities litigation.

## COUNT I

### For Violation of §11 of the Securities Act Against All Defendants

57.     Plaintiff incorporates ¶¶1-22 and 33-35 by reference. Plaintiff, for purposes of this claim, disclaims any allegations of intentional misconduct or fraud. Plaintiff asserts only strict liability and negligence claims in this cause of action.  This claim is brought on behalf of all those who acquired Refco securities at the time of the initial public offering, issued pursuant to the IPO registration statements/prospectus, including the Company's registration statement of August 8, 2005, inclusive of all prior versions of the same, who were damaged thereby, seeking to pursue remedies under the

Securities Act.   Each of the Defendants named in this cause of action were Refco officers, directors and/or signatories of the Registration Statements.   Each of the Individual Defendants named in this cause of action signed the Registration Statement and all amendments thereto, which contained untrue statements of material fact or omitted to state facts required to be stated therein or necessary to make the statements therein not misleading, and are each liable under §11(a)(1) and (2).

58.   Each of the defendants named in this cause of action is liable under §11(a) because the Registration Statements/prospectus, including the Company's registration statement of August 8, 2005, inclusive of all prior versions of the same contained untrue statements of material fact or omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading.   Each of the defendants named in this cause of action owed to the purchasers of Refco stock, including plaintiff, the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statements at the time they became effective, to ensure that they were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.   In the exercise of reasonable care, these defendants knew or should have known of the material misstatements and omissions contained in these Registration Statements.   None of the defendants named in this cause of action made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and did not omit any material facts and were not misleading.   Each of the defendants named in this action caused to be issued and participated in the issuance of the materially false and misleading statements in the Registration Statements, which misrepresented or failed to disclose, *inter alia*, the adverse facts set forth above.   Thus, defendants violated §11 of the Securities Act and are strictly liable.

59.   Defendant Grant Thornton consented to the inclusion of its opinion on Refco's financial statements as referenced within the Registration Statements/Prospectus

- 26 -

in connection with the IPO, including the Registration Statement of August 8, 2005 and reviewed and approved the financial results in the Registration Statements, and is liable in accordance with §11(a)(4) of the 1933 Act.

60.     The Underwriter Defendants sold the Company's shares in the IPO as defined in §11(a)(5) of the 1933 Act and were, therefore, responsible for the contents of the Registration Statements.

61.     Defendants Bennett, Sherer, Breitman, Harkins, Jaeckel, Lee, O'Kelley and Schoen signed, or authorized signing on their behalf, these Prospectus/Registration Statements.  Because the Registration Statements contained untrue statements of material fact or omitted to state a material fact required to be stated therein or necessary to make the facts stated therein not misleading, each of these defendants is liable as "a person who signed the Registration Statement," under §11(a)(1), 15 U.S.C. §77k(a)(1).

62.     Defendants Bennett, Sherer, Breitman, Harkins, Jaeckel, Lee, O'Kelley and Schoen were directors of Refco when the Registration Statements/prospectus, including the Company's registration statement of August 8, 2005, inclusive of all prior versions of the same and inclusive of all documents referenced therein, contained untrue statements of material fact or omitted to state material facts required to be stated therein or necessary to make the facts stated therein not misleading, defendants Bennett, Sherer, Breitman, Harkins, Jaeckel, Lee, O'Kelley and Schoen are each liable as a director under §11(a)(2), 15 U.S.C. §77k(a)(2).

63.     Plaintiff acquired Refco securities pursuant and traceable to the Registration Statements without knowledge of the untruths or omissions alleged herein, and sustained damages as a result.  Plaintiff and the other members of the Class could not have reasonably discovered the nature of defendants' untruths and omissions.

64.     This action was brought within the applicable statute of limitations.

## COUNT II

### For Violation of §15 of the Securities Act Against
### the Individual Defendants

65.     Plaintiff incorporates ¶¶ 1-6, 9-17, 33-35 and 57-64 by reference.  The Individual Defendants, by reason of their positions with Refco and/or stock ownership were controlling persons of Refco and are liable under §15 of the Securities Act. Specifically,

(a)      Defendant Bennett had the power and authority to control Refco by virtue of his position as Chairman of the Board, CEO and director of Refco.

(b)      Defendant Sherer had the power and authority to control Refco by virtue of his position as Chief Financial Officer of the Company.

(c)   Defendants Breitman, Harkins, Jaeckel, Lee, O'Kelley and Schoen had the power and authority to control Refco by virtue of their respective positions as members of Refco's board of directors.

66.     None of the Individual Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus/Registration Statements were true and devoid of any misstatements or omissions of material fact.  Therefore, by reason of his or her position of control over the Company, as alleged herein, each of the Individual Defendants is liable jointly and severally with and to the same extent that Refco is liable to plaintiff and the other members of the Class as a result of the conduct alleged herein.

## COUNT III

### For Violation of §10(b) of the Exchange Act and
### Rule 10b-5 Against All Defendants

67.     Plaintiff incorporates ¶¶1-66 by reference.

- 28 -

68.     During the Class Period, the defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

69.     The individual and underwriting defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases or acquisitions of Refco securities during the Class Period.

70.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Refco securities during the Class Period. Plaintiff and the Class would not have purchased, acquired or exchanged Refco securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

71.     As a direct and proximate result of the individual and underwriting defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases and acquisitions of Refco securities during the Class Period.

## COUNT IV

### For Violation of §20(a) of the Exchange Act
### Against the Individual and Underwriting Defendants

72.     Plaintiff incorporates ¶¶1-71by reference.

73.     The Individual Defendants prepared, or were responsible for preparing, the Company's press releases and SEC filings.  In addition, the underwriting defendants were responsible for dissemination of materially false and misleading information and failure to disclose material facts, as set forth above. By reason of their positions as directors and/or officers of Refco, and in their positions as underwriters of the Refco IPO, they had the power and authority to cause Refco to engage in the wrongful conduct complained of herein.  By reason of such wrongful conduct, the Individual Defendants and Underwriting Defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff individually and on behalf of the Class, prays for judgment as follows:

A.      Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding plaintiff and other members of the Class compensatory damages;

C.      Awarding plaintiff and members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

D.      Awarding plaintiff and other members of the Class such other relief as this Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 18, 2005

Respectfully submitted,

**WECHSLER HARWOOD LLP**

Robert I. Harwood (RH-3286)
Jeffrey M. Norton (JN-4827)
488 Madison Avenue, 8th Floor
New York, NY 10022
Tel.  (212) 935-7400
Fax.  (212) 753-3630

**SCOTT + SCOTT, LLC**
David R. Scott  (DR-8053)
Neil Rothstein
P.O. Box 192
108 Norwich Avenue
Colchester, CT 06415
Tel.  (860) 537-5537
Fax  (860 537-4432

***Attorneys for the Plaintiff***

- 31 -

## PLAINTIFF CERTIFICATION
## PURSUANT TO FEDERAL SECURITIES LAWS

_Michael Gaugler_, (APlaintiff@), declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the Complaint and retains Scott + Scott, LLC, and such co-counsel it deems appropriate to associate with, to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff=s counsel, or in order to participate in any action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff=s transaction(s) in the Refco, Inc. (RFX) security that is the subject of this action during the Class Period is/are as follows:

| No of Shares/Securities | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 100 | Bought | 8/18/05 | 26.87 |

5. During the three years prior to the date of this Certification, Plaintiff has not served, or sought to serve as a class representative in a federal securities fraud case, except as follows:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff=s pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _13th_ day of _October_, 2005, at _West Conshohocken, PA_ (city, state).

Printed Name: _Michael Gaugler_

Signature: _Michael Gaugler_

Mailing Address: _221 Highland Road_
(Please print) _Pottstown, PA    19464_
                                    (Zip/Postal Code)

Telephone #: _610.323.7057_

E-mail Address: _MIKE GAUGLER@ HoTMAIL.com_